UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| MGG INVESTMENT GROUP, LP, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5:20-CV-391-CHB |
| | ) | |
| v. | ) | |
| | ) | **ORDER GRANTING MOTION FOR** |
| ZAYAT STABLES, LLC, et al., | ) | **TRANSFER OF VENUE** |
| | ) | |
| Defendants. | ) | |

*** *** *** ***

This matter is before the Court on Defendant Justin Zayat's Motion for Transfer of Venue, [R. 5]. Plaintiff MGG Investment Group LP ("MGG") has responded in opposition, [R. 15]. Justin Zayat replied to MGG's response, [R. 23], and MGG filed a sur-reply, [R. 30]. Also before the Court is MGG's Motion to Sever and Remand, [R. 14]. Defendant Justin Zayat has responded in opposition to that motion, [R. 24], and Plaintiff has replied, [R. 26]. In addition, Justin Zayat has filed a Motion to Stay this matter pending resolution of the venue issues, [R. 12]. MGG responded in opposition to that motion, [R. 16], and Justin Zayat replied, [R. 22]. All three motions have been fully briefed and are ripe for review. For the reasons set forth below, the Court will grant Justin Zayat's Motion for Transfer of Venue, [R. 5], and will deny the remaining motions as moot.

**I. BACKGROUND**

This lawsuit arises out of a 2016 financing agreement and loan between Plaintiff MGG and Zayat Stables, LLC ("Zayat Stables"). [R. 3-11, ¶ 1 (Amended Complaint)] Pursuant to those agreements, MGG made a series of loans to Zayat Stables, a thoroughbred horse racing company. *Id.* To secure the loan, MGG accepted as collateral Zayat Stables' assets, including its

- 1 -

interest in several prominent horses and breeding rights, as well as Zayat Stable stock. *Id.* Among the assets used as collateral were certain breeding rights to Triple Crown winner American Pharaoh. *Id.* ¶ 7.

On January 21, 2020, MGG filed a complaint in Fayette Circuit Court, alleging that Zayat Stables and its sole member, Defendant Ahmed Zayat, breached the agreements by failing to make payments when due and failing to make certain disclosures related to the sale of collateral. *See, e.g.*, [R. 1-2, ¶ 3 (Complaint)] The complaint also alleged that Zayat Stables and Ahmed Zayat made various fraudulent misrepresentations during negotiations. *See, e.g., id.* ¶ 2.  As a result of this conduct, MGG asserted a breach of contract claim against Zayat Stables and a fraud claim against Zayat Stables and Ahmed Zayat. *Id.* ¶¶ 98–123. MGG also requested the appointment of a receiver to manage Zayat Stables and conserve its assets. *Id.* ¶¶ 124–132. The circuit court appointed a receiver on January 22, 2020. [R. 3-2]

On February 11, 2020, MGG amended its state court complaint. It added Justin Zayat, Ahmed's son and the Racing Manager at Zayat Stables, as a defendant, alleging fraud and intentional interference with contract. [R. 3-11, pp. 41–45] It also added fourteen other defendants it claimed purchased MGG's collateral (hereinafter, the "Third-Party Purchaser Defendants"). In their answers to the Amended Complaint, Ahmed Zayat and Zayat Stables alleged counterclaims against MGG, including fraud in the inducement, fraudulent concealment, breach of the financing agreement, breach of the covenant of good faith and fair dealing, negligence/impairment of collateral, tortious interference with prospective economic advantage, libel, and defamation, among other claims. [R. 6-15, pp. 67–71; 11-4, pp. 55–60]. Justin Zayat also answered and alleged counterclaims against MGG, including libel, defamation, and damage to reputation. [R. 11-5, pp. 49–50]

On June 10, 2020, the Fayette Circuit Court entered partial summary judgment for MGG on its breach of contract claim against Zayat Stables and entered judgment in the amount of $24,534,166.13. [R. 14, p. 5] The circuit court also dismissed the claims against the Third-Party Purchaser Defendants. *See, e.g.*, [R. 11-7] MGG has appealed those dismissal orders, and the appeals are currently pending before the Court of Appeals of Kentucky. [R. 6-16; R. 10-17; R. 11-9; R. 11-19]

On September 8, 2020, Defendant Ahmed Zayat filed a voluntary bankruptcy petition pursuant to Chapter 7 of the United States Bankruptcy Code. [R. 11-35] He filed his bankruptcy petition in the Bankruptcy Court for the District of New Jersey, Newark Vicinage (Case No. 20-20387). *Id.* A few days later, creditors filed an involuntary bankruptcy petition against Zayat Stables in the Bankruptcy Court for the District of New Jersey, Newark Vicinage (Case No. 20-20524). [R. 11-37]

On September 24, 2020, Ahmed Zayat removed "all claims contained in the proceeding entitled *MGG Investment Group LP vs. Zayat Stables LLC and Ahmed Zayat, et al.* Civil Action No. 20-CI-00248, currently pending before the Fayette Circuit Court, Division 9, of the courts of the Commonwealth of Kentucky." [R. 1] Ahmed explained that, upon removal, the matter should be transferred to the District Court for the District of New Jersey, and that court could then transfer the matter to the Bankruptcy Court for the District of New Jersey, where both bankruptcy proceedings are currently pending. *Id.* at 4.

On September 24, 2020, the same day that Ahmed Zayat removed the matter to this Court, Justin Zayat filed a Motion for Transfer of Venue, [R. 5]. In that motion, Justin requests that the case be transferred to the United States District Court for the District of New Jersey. Neither Ahmed Zayat nor Zayat Stables has joined or otherwise responded to that motion. Justin

then filed a Motion to Stay any further action in this case pending resolution of the venue issues, [R. 12]. MGG later filed the present Motion to Sever and Remand requesting that the Court sever the claims against Justin Zayat and remand those claims to Fayette Circuit Court, [R. 14].

Each of these three pending motions has been fully briefed by the moving parties[1] and is ripe for review. For the reasons set forth below, the Court will grant Justin Zayat's Motion for Transfer of Venue and will transfer this matter to United States District Court for the District of New Jersey. As a result, the remaining two motions will be dismissed as moot.

## II.  ANALYSIS

In his Motion for Transfer of Venue, Justin Zayat asks the Court to transfer this matter under 28 U.S.C. § 1404 (the general change-of-venue statute) or 28 U.S.C. § 1412 (the change-of-venue statute specific to bankruptcy proceedings). In response, MGG argues that the Court lacks subject matter jurisdiction and regardless, the transfer statutes are inapplicable. [R. 15; R. 30] For the reasons set forth below, the Court finds that this matter is related to the ongoing bankruptcy proceedings, and as a result, this Court has original jurisdiction over the matter under 28 U.S.C. § 1334(b) and may transfer the proceeding to another district court under § 1412.

### A.  Section 1412 Applies Because These Claims are "Related To" the Bankruptcy Proceedings.

Under 28 U.S.C. § 1452, "[a] party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452(b). Section 1334, in turn, provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to

---

[1] Defendants Ahmed Zayat and Zayat Stables have not responded to any of the pending motions.

cases under title 11." 28 U.S.C. § 1334(b). Thus, if a civil proceeding "aris[es] under title 11," the district court has original jurisdiction over that proceeding, and a party may remove the matter to that district court.[2] Section 1412 then authorizes the district court to "transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. Other district courts within this circuit have held that a case or proceeding is "under title 11" as stated in § 1412 if it is "related to" a bankruptcy proceeding, as that term is used in 28 U.S.C. § 1334(b). *KFC Corp. v. Wagstaff*, 502 B.R. 484, 489 (W.D. Ky. 2013) (citation omitted).

Thus, in sum, if a civil proceeding "aris[es] under title 11, or aris[es] in or relate[s] to cases under title 11," a district court has original jurisdiction under § 1334(b), and that proceeding may be removed from state court to that district court under § 1452. At that point, the court can transfer the matter to another district court under § 1412, so long as the action falls "under title 11," or, in other words, so long as it is "related to" a bankruptcy proceeding. The United States District Court for the Western District of Kentucky adopted this approach in *KFC Corp. v. Wagstaff*, 502 B.R. 484 (W.D. Ky. 2013), a case relied upon by Justin Zayat.

---

[2] MGG argues that this Court lacks the subject matter jurisdiction necessary to resolve this claim. [R. 15, pp. 9–11] First, MGG argues that the claims against Justin are not "related to" the bankruptcy proceeding and, as a result, jurisdiction under § 1334 is not triggered. *Id.* at 9–10. As the Court explains herein, the claims against Justin *are* "related to" the bankruptcy proceeding, and this Court therefore has original jurisdiction over these claims pursuant to § 1334. Further, to the extent MGG argues that the Court only has jurisdiction over a debtor's bankruptcy claims under § 1334, the Sixth Circuit has clearly explained that a proceeding against a nondebtor defendant can confer "related to" subject matter jurisdiction. *In re Dow Corning*, 86 F.3d 482, 493 (6th Cir. 1996).

Next, MGG argues that this Court lacks jurisdiction because the dismissal of the Third-Party Purchaser Defendants is currently on appeal before the Court of Appeals of Kentucky, citing *In re Ramada Inn-Paragould General Partnership*, 137 B.R. 31 (Bankr. E.D. Ark. 1992). [R. 15, pp. 10–11] In that case, the entire state court proceeding had concluded and was on appeal when a notice of removal was filed. The court abstained from exercising jurisdiction, noting that there was nothing pending in the state court proceeding and therefore, nothing for the court to consider or decide. By contrast, in the present case, the Third-Party Purchaser Defendants were dismissed at the state court level, but the claims against Justin Zayat, Ahmed Zayat, and Zayat Stables remain active.

On this point, MGG argues that, "[d]espite the Western District of Kentucky's opinion in [*KFC Corp.*], which evaluated transfer under Section 1412 in a case that was only 'related to' the bankruptcy proceedings, the Sixth Circuit has not held that Section 1412 may be applied to 'related to' cases." [R. 15, p. 12, n.3] In other words, MGG argues that § 1412 does not turn on whether a case is "related to" a bankruptcy proceeding but instead is triggered only when the proceeding falls "under" the Bankruptcy Code. MGG then criticizes the *KFC Corp.* opinion for failing to "engage the statutory text" and "[relying] heavily on two unpublished opinions in conducting its analysis." *Id.* MGG contends that, after the *KFC Corp.* opinion was published, other federal courts held that § 1412 applies only to cases or proceedings "under" the Bankruptcy Code. *Id.* In support, MGG cites to a single case, *Multibank, Inc. v. Access Global Capital LLC*, 594 B.R. 618 (Bankr. S.D.N.Y. 2018).

The Court does not find MGG's argument or the *Multibank, Inc.* case to be persuasive. First, the Court notes that the Bankruptcy Court in *Multibank, Inc.* expressly acknowledged that other courts "have held that section 1412 grants authority for the transfer of lawsuits that relate to pending bankruptcy cases, even if the lawsuits assert claims that do not arise 'under' the Bankruptcy Code." *Id.* at 622 (citation omitted). The *Multibank, Inc.* court then declined to follow those cases and chose instead to "reaffirm [its] own prior decision in" *Onewoo Corp. v. Hampshire Brands, Inc.*, 566 B.R. 136 (Bankr. S.D.N.Y. 2017). In *Onewoo*, the Bankruptcy Court also acknowledged that other federal courts have held that Section 1412 grants authority to transfer cases that are "related to" a bankruptcy case. *Id.* at 139–140. It then noted that the Second Circuit (in which the Southern District of New York lies) had not ruled on the issue, but several district courts within the Southern District of New York had concluded that "Section 1412 only applies to cases arising 'under' the Bankruptcy Code, and that the transfer of cases

- 6 -

that are 'related to' a bankruptcy case may only be made [under] Section 1404(a) of Title 28." *Id.* at 140 (citations omitted). The Bankruptcy Court relied on these district court cases in holding that a case arises "under" title 11 only "if it is the main bankruptcy case itself or if a proceeding asserts causes of action that are created by the Bankruptcy Code." *Id.* at 139.

Like the Second Circuit, the Sixth Circuit has not ruled on this precise issue. However, like the Southern District of New York, this Court is benefitted by other district courts in this circuit that have carefully considered the issue. Unlike the district courts in the Southern District of New York, however, the district courts within the Sixth Circuit have held that § 1412 applies to proceedings "related to" a bankruptcy proceeding pursuant to § 1334(b). *See KFC Corp.*, 502 B.R. at 499–501; *JWJ Hotel Holdings, Inc. v. W&H Realty, LLC*, No 1:18-cv-454, 2018 WL 3772179, *4 (S.D. Ohio Aug. 9, 2018); *RFF Family Partnership, LP v. Wasserman*, No. 1:07-cv-1617, 2010 WL 420014, *5 (N.D. Ohio Jan. 29, 2010); *Mello v. Hare, Wynn, Newell & Newton, LLP*, No. 3:10–CV–243, 2010 WL 2253535, *3 (M.D. Tenn. May 30, 2010). Without any binding Sixth Circuit precedent to the contrary, this Court will follow the analysis set forth in these district court decisions. Accordingly, when determining whether this matter is "under title 11" as used in the transfer statute, § 1412, the Court will consider whether the case is "related to" a bankruptcy proceeding, as that term is used in § 1334(b).

The Sixth Circuit has explained that a case is "related to" a bankruptcy proceeding if "*the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy*." *Robinson v. Mich. Consol. Gas. Co., Inc.*, 918 F.2d 579, 583 (6th Cir. 1990) (quoting *In re Pacor, Inc.*, 743 F.2d 984, 994 (3d Cir. 1984) (emphasis in original)). As a result, "the proceeding need not necessarily be against the debtor or against the debtor's property." *Id.* (quoting *Pacor*, 743 F.2d at 994); *see also In re Dow Corning*, 86 F.3d 482, 493 (6th Cir. 1996)

- 7 -

(holding that court had "related to" subject matter jurisdiction over claims pending against the nondebtor defendants). Instead, "[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Robinson*, 918 F.2d at 583 (quoting *Pacor*, 743 F.2d at 994).

Claims that may give rise to indemnification claims have been held to be "related to" a bankruptcy proceeding. For example, in *KFC Corp.*, the Court explained, "Where the adjudication of a case may subsequently result in indemnification claims by the defendant against a debtor's estate, the case is 'related to' that debtor's bankruptcy proceedings and qualifies for transfer under § 1412, given the obvious effects that such indemnification claims would have upon the related bankruptcy estates." *KFC Corp.*, 502 B.R. at 500 (citing *Dow Corning*, 86 F.3d at 482). Accordingly, "[t]he likelihood of the debtor being held liable to the nondebtors for contribution and indemnification claims suffices to establish a conceivable impact on the estate in bankruptcy." *Id.* (citing *Dow Corning*, 86 F.3d at 482). "Importantly, neither the possibility of the indemnification claims being brought, nor the debtors' liability for any such claims must be certain and definite—the possibility of such claims renders a case 'related to' the debtor's bankruptcy proceeding." *Id.* at 500 (citation omitted). Thus, "indemnity claims also need not ripen against the debtor in order to serve as a potential basis for 'related to' jurisdiction." *Id.* at 501; *see also Dow Corning*, 86 F.3d at 494 (holding that the "related to" analysis under § 1334(b) "does not require a finding of definite liability of [an] estate as a condition precedent to holding an action related to a bankruptcy proceeding" (quoting *In re Salem Mortgage Co.*, 783 F.2d 626, 635 (6th Cir. 1986))).

Under the circumstances of this case, the Court finds that the claims against Justin Zayat are "related to" the bankruptcy proceedings. MGG's claims against Justin Zayat include tortious interference with contract (the financing agreement and loan between MGG and Zayat Stables) and fraud related to certain representations made during the negotiations for the loan and actions related to collateral securing the loan.  Against Ahmed Zayat and Zayat Stables, MGG alleges similar claims of breach of that contract and fraud, all arising out of the same facts. If Justin Zayat is found liable in this matter, he could conceivably seek indemnification from Zayat Stables, or vice versa. For example, MGG alleges that Justin Zayat wrongfully sold the collateral (i.e., the breeding rights) and pocketed the funds, but Justin alleges that the proceeds of each sale were placed in the LLC's operating account and later used to pay off the LLC's business obligations. [R. 23, pp. 6–7] Under these facts, if Justin is found liable in this case, he could potentially seek indemnification from the LLC.

A potential indemnification claim could, in turn, "affect the size of the debtors' estates; the length of time the debtors' bankruptcy proceedings will take; and the debtors' ability to resolve their liabilities and complete their reorganization plans." *KFC Corp.*, 502 B.R. at 501 (citation omitted). Thus, the resolution of MGG's claims against Justin Zayat could conceivably affect the bankruptcy estates and reorganization plans of Defendants Zayat Stables and Ahmed Zayat. This "suffices to establish a conceivable impact on the estate in bankruptcy." *Id.* (citing *Dow Corning*, 86 F.3d at 482). MGG's argument that Justin has not yet brought any indemnity claims is unavailing. Rather, it is the "possibility" of such claims that renders these matters "related to" and bankruptcy proceeding. *KFC Corp.*, 502 B.R. at 500.

Further, even if Justin never brings indemnity claims against the other Defendants, which MGG argues is highly unlikely, this action is nevertheless "related to" the New Jersey

bankruptcy proceedings with the real possibility of affecting the bankruptcy estate. MGG argues at length that its claims against Justin "stem from discreet individual conduct," [R. 15, p. 2], and that Justin played an "individual role" in the alleged fraudulent scheme [R. 15, pp. 6, 13–15]. While MGG stresses the individual actions of Justin, it fails to acknowledge that these alleged actions all derive from the exact same financing transaction involving Zayat Stables, Ahmed Zayat, and MGG, and the same Zayat Stables collateral pledged to MGG as part of the financing transaction, as the claims being heard in bankruptcy court. The question before this Court is not whether MGG has stated "valid and independent claims for fraud and intentional interference with contractual relationships" against Justin. [R. 30, p. 2] The question is whether resolution of these claims has the "potential" to affect the bankruptcy estate. *See generally*, *KFC Corp.*, 502 B.R. at 500.

MGG's pleadings and Amended Complaint demonstrate this point. MGG's claims against Justin include intentional interference with contractual relations (deriving from the financing documents) and fraud, alleging that Justin was part of a "fraudulent scheme" perpetuated by Ahmed Zayat, Zayat Stables, and Justin Zayat related to the MGG loan and its supporting collateral. [R. 3-11, ¶ 4] That is, the claims against Justin (and his counterclaims) are inextricably intertwined with the contractual relationships and business dealings among Ahmed Zayat, Zayat Stables, and MGG.

Moreover, resolution of the claims against Justin (and his counterclaims) has the likelihood of impacting the debtors' (Ahmed Zayat and Zayat Stables) liabilities and the bankruptcy estate. *In re Dow Corning*, 86 F.3d at 491–92. MGG's Response and Sur-reply make this clear. MGG alleges "Justin in particular played a unique role of the underhanded liquidator of Zayat Stables' prized assets." [R. 15, p. 4] MGG goes on, "Justin played an individual role in

- 10 -

several other fraudulent transactions whereby MGG's Collateral was impermissibly liquidated." *Id.* at 6. The potential impact that these claims may have on the bankruptcy estate is further underscored by the allegation that Justin violated the loan agreement by selling stallion shares that originally belonged to him but were later transferred to Zayat Stables for use as collateral to secure the loan transaction with MGG. Plaintiff's Sur-Reply alleges Justin sold this collateral "out from under" MGG and outlines the tangled financial web among Justin, Zayat Stables, Ahmed Zayat, and other companies related to the Zayats. [R. 30, pp. 2–4] Certainly these financial entanglements will raise issues of apportionment, potential contribution, and respective liability, even if no indemnity claim is ultimately filed. That is, the outcome in this proceeding "could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively)" and it may impact "the handling and administration of the bankrupt estate." *Robinson*, 918 F.2d at 583 (quoting *Pacor*, 743 F.2d at 994).

Lastly, the Court notes MGG's reliance on the orders of the Fayette Circuit Court, in which that court held that it possessed general and specific personal jurisdiction over the defendants, including Justin Zayat, and that Kentucky state law governed the fraud and intentional interference with contract claims. [R. 15, p. 7; R. 10-19] The crux of MGG's argument seems to be that, based on the circuit court's findings, Justin's actions are so connected to Kentucky that these claims should be heard in Kentucky. However, the question of whether Justin's actions were sufficient to establish personal jurisdiction in Fayette Circuit Court is not relevant to this Court's inquiry into whether this action is "related to" the pending bankruptcy matters. To the extent that this Court must consider whether Kentucky has an interest in hearing this action, the Court has done so below. *See infra* Section II(B).

In sum, the present matter "relates to" the New Jersey bankruptcy proceedings due to the possibility of an indemnification claim and the potential effect that such an indemnification claim could have on the New Jersey bankruptcy proceedings (including the debtors' estates and reorganization plans). Similarly, even in the absence of a potential indemnity claim, the Court finds that resolution of the claims involving Justin "*could conceivably have* [an] *effect on the estate being administered in bankruptcy*" given the intertwining allegations of fraud and contractual interference and the overlapping collateral and financial entanglements among Justin, Zayat Stables, and Ahmed Zayat. *Robinson*, 918 F.2d at 583 (quoting *Pacor*, 743 F.2d at 994 (emphasis in original)).  Accordingly, the Court will consider transfer under § 1412.

## B.  Transferring Venue Under § 1412 Serves the Interests of Justice.

Section 1412 provides, "A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." The "'interest of justice' and 'convenience of the parties' standards are disjunctive and separate, and transfer is appropriate even if only one is met." *KFC Corp.*, 502 B.R. at 498–99. (citation omitted).  When considering whether a discretionary transfer under § 1412 serves the interest of justice, courts examine seven factors:

> (1) the "strong presumption" in favor of transfer to the district court where the bankruptcy proceedings are pending; (2) the economics of estate administration; (3) judicial efficiency; (4) the ability to receive a fair trial; (5) the state's interest in having local controversies decided within its borders; (6) the enforceability of any judgment rendered; and (7) the plaintiff's original choice of forum.

*KFC Corp.*, 502 B.R. at 502 (citation omitted). "Courts give the greatest weight to whether the proposed transfer would promote the economic and efficient administration of the bankruptcy estate." *JWJ Hotel*, 2018 WL 3772179, at *5 (citation omitted). Ultimately, the "decision to grant or deny a motion to transfer venue under § 1412 is committed to the discretion of the

- 12 -

district court." *KFC Corp.*, 502 B.R. at 498 (citing *Philip Carey Mfg. Co. v. Taylor*, 286 F.2d 782, 784 (6th Cir. 1961)).

Here, the factors indicate that transfer to the District Court of New Jersey serves the interest of justice. With respect to the first factor, there is a "strong presumption" in favor of transferring to the District Court of New Jersey because that is where the bankruptcy proceedings are pending. The second factor also weighs heavily in favor of transfer. That factor "addresses the economics of estate administration in determining whether transfer will serve the interest of justice or 'the extent to which the outcome of the case could effect [sic] the administration of the debtors' estate if it is not transferred." *KFC Corp.*, 502 B.R. at 502 (quoting *RFF Family Partnership*, 2010 WL 420014, * 8). As the Court has already explained in detail, a finding of liability on MGG's claims against Justin Zayat, Ahmed Zayat, or Zayat Stables could result in an indemnification claim. That indemnification claim could significantly impact the administration of the bankruptcy proceedings. And even in the absence of an actual indemnity claim, for the reasons previously explained, the claims against Justin have the significant potential to affect the bankruptcy estate given the allegations with respect to some of the collateral and the financial entanglements among the debtors (Ahmed Zayat and Zayat Stables) and Justin. Therefore, the second factor—which is given the greatest weight—also weighs in favor of transferring this matter to the New Jersey District Court.

The third factor—judicial efficiency—similarly weighs in favor of transfer because many of the facts and issues in the present matter will overlap with the claims against Zayat Stables and Ahmed Zayat. It will be more efficient to conduct discovery, call witnesses, and debate the issues in a single court. Stated another way, "requiring the parties to appear before a second venue to present the same facts, witnesses, documentation, and proof to another tribunal would

- 13 -

be unnecessarily duplicative." *KFC Corp*, 502 B.R. at 502. Further, it appears that all the key witnesses reside in New York and New Jersey.

As to the fourth factor, the Court must consider the ability to receive a fair trial. In this case, there is no evidence suggesting that either party would receive an unfair trial in either Kentucky or New Jersey. Thus, this factor does not weigh against transfer. The fifth factor is also neutral. Under that factor, the Court must consider the state's interest in having local controversies decided within its borders. Here, the state court ruled that MGG's claims arise under Kentucky law, [R. 10-19], and Kentucky arguably has an interest in having the state-law claims heard in a Kentucky. However, none of the existing parties to this action are Kentucky citizens. The loan and financing agreements involved a business and individuals in New Jersey and investors in New York, and New Jersey also has an interest in resolving the claims involving its own citizens. Further, it appears that the loan transaction was negotiated in New York and New Jersey, and some of the alleged fraudulent conduct took place in New York and New Jersey, not Kentucky. The fifth factor is therefore neutral, at best. Further, the sixth factor does not weigh against transfer, as there is no indication that a judgment rendered in New Jersey would be unenforceable in Kentucky (or vice versa).

Finally, the seventh factor—the plaintiff's choice of forum—weighs against transfer. "However, the plaintiff's choice is 'but one factor in the analysis and is not alone dispositive.'" *KFC Corp.*, 502 B.R. at 503 (quoting *Am. Signature Inc. v. Moody's Investors Servs., Inc.*, No. 2:09–cv–878, 2010 WL 2667367, *2 (S.D. Ohio July 2, 2010)). In this case, the plaintiff's choice of forum is outweighed by the other factors which weigh heavily in favor of transfer. Further, the import of Plaintiff's choice of forum is even less compelling given that Kentucky is not the home forum of Plaintiff, or any other party. *See Dorsey v. Hartford Life & Acc. Ins. Co.*, No. 1:08-CV-

- 14 -

243, 2009 WL 703384, *4 (E.D. Tenn. Mar. 16, 2009) ("Where the plaintiff's choice of forum is not the plaintiff's home forum and none of the operative events occurred in the district, the plaintiff's choice of forum is given the same weight as the other factors considered in a transfer analysis.").

Accordingly, the Court will exercise the authority granted to it under § 1412 to transfer this matter to the United States District Court for the District of New Jersey.

## C. CONCLUSION

For the reasons set forth above, the Court will grant Justin Zayat's Motion for Transfer of Venue, [R. 5], and will transfer this Matter to the United States District Court for the District of New Jersey. Because the Court is transferring this matter, MGG's Motion to Sever and Remand, [R. 14], and Justin Zayat's Motion to Stay, [R. 12], are moot.

Accordingly, the Court being sufficiently advised, **IT IS HEREBY ORDERED** as follows:

1. Defendant Justin Zayat's Motion to Transfer Venue, **[R. 5]**, is **GRANTED**. The **Clerk of Court** is **DIRECTED** to transfer this matter to the United States District Court for the District of New Jersey.

2. Defendant Justin Zayat's Motion to Stay, **[R. 12]**, is **DENIED as moot**.

3. Plaintiff MGG Investment Group LP's Motion to Sever and Remand, **[R. 14]**, is **DENIED as moot**.

This the 13th day of April, 2021.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

- 15 -